IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGINA RAWLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17-CV-617 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM and ORDER**

Presently before the Court are cross-motions for summary judgment. For the reasons set forth, below, the defendant's motion (ECF No. 14) will be granted; the plaintiff's motion (ECF No. 11) will be denied; and, the final decision of the Commissioner of Social Security will be affirmed.

On May 12, 2017, plaintiff Regina Rawls filed a complaint pursuant to 42 U.S.C. § 405(g) for review of the Commissioner's final determination denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*.

Plaintiff filed her initial application for benefits on July 15, 2013, alleging a disability onset date of November 30, 2012 (R.184-90). Plaintiff's claim was denied on February 27, 2014 (R.105-08). A hearing before an administrative law judge was requested on March 11, 2014 (R.109-10), said hearing being convened on December 17, 2015 (R.36-76). In a decision dated March 10, 2016, plaintiff's claim for benefits was denied (R.18-35). A request for review by the Appeals Council (R.14-17) was denied on March 13, 2017 (R.1-6), making the decision of the ALJ the final decision of the Commissioner. The instant complaint and related motions followed. Plaintiff therein argues that the ALJ erred in failing to give full weight to the functional capacity assessment of Lisa Miller, PA-C. (ECF No. 12 at 9). Defendant counters

that the ALJ accorded Ms. Miller's opinion appropriate weight, and that his decision was supported by substantial evidence. (ECF No. 15 at 8-13.)

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his or her burden of demonstrating that he or she was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. § 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, *Johnson v. Comm'r*, 529 F.3d 198 (3d Cir. 2008), and the court may not set aside a decision supported by substantial evidence. *Hartranft v. Apfel*, 181 F.3d 358 (3d Cir. 1999).

At the December 17, 2015, hearing before the ALJ, plaintiff appeared, represented by counsel, and testified that she graduated high school, served in the armed forces from 1982 through 1985, and completed some college. (R.39, 44.) She was most recently employed in customer service for a company contracted by the United States Postal Service to track and return misdirected packages. (R.47.) At the time, plaintiff resided in North Carolina. (R.45.) In 2013, she relocated to the Pittsburgh area to spend time with her terminally ill mother. (R.45.)

Plaintiff testified that she left her former place of employment because she could not complete a full eight-hour workday. (R.46.) This was due primarily to pain, fatigue, and impaired vision. (R.46.) Plaintiff's alleged impairments prohibited her from even doing day-to-

day tasks normally. (R.48.) Neuropathy caused plaintiff's feet to fall asleep and have a sensation of pins and needles (R.48); sitting for extended periods caused her legs to throb (R.48); plaintiff always sat with her feet up (R.57); standing was limited to ten to fifteen minutes (R.70); a spur on her foot caused swelling (R.60); difficulty ambulating without a cane limited her ability to go grocery shopping, cook meals, clean, or do laundry (R.49-51); even with a cane, plaintiff experienced sharp spasms in her legs the more she walked (R.52); hobbies such as crocheting, and tasks such as typing and opening bottles, were limited due to cramping in the hands (R.50, 61-62); attempts to ride a bike were hampered by weakness in plaintiff's legs (R.51); looking at television and computer screens for extended periods caused double vision (R.53-54); reading for lengthy periods, small print, and driving for extended periods caused blurred vision (R.63-64, 67); medication prescribed for diabetes did not effectively maintain a stable blood-sugar level (R.55); medications such as codeine, Gabapentin, and Cymbalta for treatment of fibromyalgia and neuropathy caused fatigue (R.55-57); and, she fell asleep once per day, for one to two hours (R. 59).

The ALJ subsequently called upon a vocational expert to testify. (R.71-75.) He described plaintiff's prior work as a customer service representative as skilled, sedentary work. (R.72.) When asked to assume an individual with plaintiff's work history, age, education, and functional restrictions who was limited to light work, the vocational expert testified that such an individual could not perform plaintiff's past work (R.73-74). However, he also stated that there was a range of light work that such an individual could perform, even with a sit/stand option. (R. 74-75.) He also explained that only limited absences or time off-tasks would be tolerated. (R. 74-75.)

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that plaintiff was not disabled within the meaning of the Social Security Act.

The term "disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. § 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence… "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the county.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. § 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. *NLRB v. Staiman Brothers*, 466 F.2d 564 (3d Cir. 1972); *Choratch v. Finch*, 438 F.2d 342 (3d Cir. 1971); *Woods v. Finch*, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support

the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed:

Treatment records from June of 2013 contain notations indicating that plaintiff's blood glucose levels were showing continued improvement (R.430), her visual acuities without correction were 20/25 (R.433), and she exhibited no signs of diabetic retinopathy (R.435).

On December 9, 2013, plaintiff was examined for the purpose of establishing a new primary care provider. (R.537.) She was observed to have limited range of motion in her back, but no tenderness; full motor strength and intact reflexes; and, a slightly antalgic gait. (R.540.) She was also noted to have full range of motion in all extremities, although she experienced some right shoulder pain. (R.540.) Gabapentin and Tylenol with codeine were noted to provide good relief of claimed pain in her back, neck, legs, and shoulders. (R.541-42.)

Plaintiff was examined by Geneen Dashefsky, D.O., on January 24, 2014, for purposes of completing a Medical Source Statement of Ability to do Work-related Activities (Physical). (R.581-89.) In the examination report, Dr. Dashefsky noted that plaintiff reported no numbness or weakness, and appeared to be in no acute distress; she had full strength and normal reflexes, and she had near normal range of motion in the hip, spine, and ankle. (R.582, 589.) In the functional capacity assessment, Dr. Dashefsky determined that plaintiff could: frequently lift and carry up to 10 pounds; occasionally lift and carry up to 20 pounds; sit for 8 hours; stand or walk 4-5 hours; ambulate with the use of a cane; continuously handle, finger, and feel; occasionally reach, push, and pull; occasionally climb stairs and ramps, and stoop; never climb ladders or scaffolds, or balance, kneel, crouch, or crawl; read very small print, ordinary book and newspaper print, and computer screens for short periods; occasionally operate a vehicle and

5

tolerate humidity, wetness, dust, odors, fumes, extreme heat and cold, and vibration; and, never tolerate unprotected heights or moving machinery.  (R.583-88.)

On February 25, 2014, state agency evaluator Juan Mari-Mayans, M.D., completed a functional capacity assessment of plaintiff.  (R.95-97.)  Following a review of the medical record, he concluded that plaintiff was capable of the following: occasionally lifting or carrying up to 20 pounds; frequently lifting or carrying up to 10 pounds; standing or walking 6 hours of an 8-hour workday; sitting 6 hours; and, pushing and pulling without limitation.  (R.95-97.)

At an endocrinology consult on April 3, 2014, plaintiff was noted to have type-II diabetes mellitus complicated by neuropathy.  (R.703.)  Her blood glucose levels were considered to be "fairly reasonable on review."  (R.703.)

On May 20, 2014, physiatrist Alison Peterson, M.D., completed a physical examination of plaintiff and found: functional range, bilaterally, in the shoulders, low back, and knees; no ligamentous instability; some tenderness in the bilateral shoulders; some tenderness in the low back; no objective evidence of muscle spasm; full strength with normal muscle tone and bulk in the upper and lower extremities; slightly antalgic gait without a cane; and, a steady gait with a cane.  (R.922.)  Weight loss, physical therapy, and anti-inflammatory medication were recommended.  (R.922.)  Plaintiff's knees were considered to be normal.  (R.922.)

At a physical therapy consult on June 3, 2014, screening of plaintiff's lower extremities revealed that range of motion in the back was within normal limits, with some discomfort noted; range of motion in the hip was within normal limits, with near full strength; range of motion in the knees was within normal limits, with full strength; and range of motion in the ankles was within normal limits, with near full strength.  (R.679-80.)  Straight-leg raise testing was negative.  (R.680.)  Tenderness was noted over the shoulders and lower back, and plaintiff's gait was

6

antalgic. (R.681.) Rehab potential for lower back pain and shoulder pain were considered to be "fair." (R.682.)

A primary care note from June 30, 2014, indicated that plaintiff had not been following a diet or exercising; had been receiving good relief from neck pain with gabapentin; had no lower back tenderness; had full range of motion in the back in all planes, with some pain; had full motor strength and reflexes in the back; had full range of motion in all extremities, with some shoulder pain; and had full sensation. (R.858-62.)

An optometry note from November 5, 2014, recorded that plaintiff complained of decreased vision for both distance and near, and blurring. (R.729.) Upon examination, there were no signs of glaucoma, macular degeneration, or diabetic retinopathy, reiterating similar findings from a June 10, 2014, examination. (R.717, 729, 731.)

A post-operative follow-up visit on November 6, 2014, pertaining to the results of a surgical procedure to treat carpal tunnel syndrome, revealed that plaintiff was "doing great" with "complete resolution of her numbness and tingling" in both hands. (R.1541.)

On December 3, 2014, plaintiff was assessed for purposes of an endocrinology consultation. (R.1259.) Endocrinologist Emily Martin, M.D., determined that plaintiff's diabetes was complicated only by neuropathy. (R.1264.) Control, however, was considered to be "excellent." (R.1264.)

A January 23, 2015, imaging study of the left hip showed no abnormality. (R.1176-77.) Imaging of the lumbosacral spine that same day revealed mild degenerative changes. (R.1178-79.)

Imaging studies of plaintiff's left knee in March and April of 2015 revealed degenerative changes. (R.1174-76.)

On April 21, 2015, plaintiff was examined for complaints of knee pain. (R.1251.) Examination revealed no evidence of swelling or tenderness over the lumbar spine; there was mild buttock tenderness; there was good range of motion in the lumbar spine with minimal pain; there was no swelling of the knees, but there was mild tenderness; range of motion and strength were normal; the knees were stable; and, no abnormality was noted in the hips. (R.1251-52.) Plaintiff was recommended for physical therapy, and would benefit from weight reduction. (R.1252.) Degenerative changes in the joints were considered to be mild. (R.1252.)

In June of 2015, a yearly diabetic examination of Plaintiff's vision found no fluctuations, and no signs of diabetic retinopathy. (R.1521-22.)

Plaintiff was discharged from physical therapy on July 2, 2015, after the completion of a course of therapy for lower back pain. (R.1567.) She reduced her pain during the course of therapy, and she was considered to have a good prognosis for further pain reduction by engaging in home exercise. (R.1567.)

A July 9, 2015, imaging study of the cervical spine showed mild disc space narrowing and mild neural foraminal narrowing. (R.1172.)

Plaintiff returned to endocrinologist Emily Martin, M.D., on July 29, 2015. (R.1394.) Dr. Martin indicated that plaintiff's only diabetes-related complication was neuropathy, that plaintiff's control was "good," and that plaintiff was stable on her regimen. (R.1397-98.)

On September 18, 2015, Stephanie Prosperi, M.D., examined plaintiff and reported that her pain level was 3/10 in multiple joints, and that she took Tylenol and gabapentin for relief. (R.1454). Dr. Prosperi recommended that Plaintiff stay active, work on weight loss, and possibly consult with a pain clinic. (R.1454.)

An October 11, 2015, imaging study of the right hip showed minimal, if any, degenerative change. (R.1169.)

On October 19, 2015, plaintiff was examined by Lisa Miller, PA-C, due to complaints of lower back, neck, and hip pain, and visual disturbance. (R.1413, 1415.) Following physical examination, Ms. Miller concluded that plaintiff likely had fibromyalgia because of the presence of tenderness over 12 of the 18-20 sites specific to the disorder. (R.1417.) Plaintiff was prescribed Cymbalta. (R.1417.)

Plaintiff was seen for an orthopedic evaluation on October 29, 2015, regarding ongoing complaints of hip and knee pain. (R.1540.) Upon physical examination, plaintiff was found to be in no acute distress, was able to ambulate with an assistive device, and had exquisite tenderness in the right upper thigh, but with full range of motion. (R.1540.) Plaintiff was informed that she needed to start stretching exercises and physical therapy. (R.1540-41.) Plaintiff was provided with a cortisone injection and told to follow-up, as needed. (R.1541.)

Also on October 29, 2015, plaintiff was evaluated by a neurologist for complaints of double-vision. (R.1209.) Upon examination, plaintiff's visual fields were found to be full, her pupils were equal, round, and reactive, her extraocular muscles were intact, and she had very mild issues with convergence, as well as the failure of the left eye to adduct and invert. (R.1213.) No fatiguability was noted. (R.1213.) There was no clear etiology for her claimed visual disturbance, so an MRI was ordered. (R.1209, 1214.)

An MRI of the brain on November 12, 2015, found no abnormality to account for the double-vision. (R.1165.)

On December 14, 2015, Lisa Miller, PA-C, completed a functional capacity evaluation of plaintiff. (R.1597-1602.) Ms. Miller noted that plaintiff suffered impairment in the way of

9

double-vision, fibromyalgia, low back pain, chronic fatigue syndrome, and uncontrolled diabetes. (R.1597.) Plaintiff's prognosis was considered to be guarded-to-poor; she could only stand for 10-20 minutes at a time; she could only sit for 20-30 minutes at a time; she needed to lie down during the day; she needed to close her eyes due to blurred and double-vision; she could rarely reach above her shoulders or down to the floor; she could frequently reach to waist level, carefully handle objects, and handle with her fingers; she would need three or more unscheduled rest breaks per day; she could not lift more than 5 pounds; she was unable to kneel, stoop, or squat, and had limited ability to bend or turn; she could not drive; she had daily muscle pain and spasm; and, could work no more than 1-4 hours per day. (R.1598-1601.)

The applicable regulations require more explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§ 404.1501, *et seq.*, set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether she meets or equals the 'Listings of Impairments' in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether she can do her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength she can exert in engaging in work activity), and if her impairment enables her to do

sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> The claimant has not engaged in substantial gainful activity since November 30, 2012, the alleged onset date….
>
> The claimant has the following severe impairments: asthma, diabetes with neuropathy, degenerative disc disease, fibromyalgia, visual disturbance and osteoarthritis.
>
> [T]he record contains only one reference to fibromyalgia, characterized by tender points. While the claimant was not followed by a rheumatologist, she has presented with complaints of joint pain. As a result, I afforded limitations…
>
> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1….
>
> [T]he claimant is diabetic and reports neuropathic pain. However, the record does not reveal significant treatment for this condition, diabetic foot examinations have been normal and examiners have noted her condition is under excellent control…
>
> [W]hile the claimant reported blurred vision, glaucoma, macular degeneration and retinopathy were ruled out… An MRI of the brain was normal and a physical and neurological examination revealed normal strength, sensation, visual fields, coordination, reflexes, gait and no evidence of neurological defects….
>
> Despite her alleged pain, physical examinations have consistently revealed normal strength, sensation, range of motion and gait, without evidence of deformity, effusion, swelling, tenderness or atrophy and a diabetic foot examination was

normal. Moreover, an MRI [of the] cervical and lumbar spine and left knee revealed only degenerative changes….

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except: the claimant needs to alternate sitting and standing every 30 minutes; the claimant can occasionally climb ramps, stairs, balance, stoop, kneel and crouch and cannot climb ladders, ropes or scaffolds or crawl; the claimant must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, extreme cold, heat, wetness, inherently dangerous moving machinery, unprotected heights or commercial driving; the claimant requires a hand held device when on uneven terrain or prolonged ambulation; the claimant is limited to frequent bilateral handling, feeling and fingering; [and,] the claimant has limited to near acuity such that she is unable to read fine print, but is able to read large font print with her glasses and has limited depth perception such that she would need to take special care for things like distance, parking curbs or stairs….

[P]hysical examinations have been consistently unremarkable….

Additionally, these treatment notes reveal the claimant admitted Gabapentin was effective at managing her symptoms….

I afford no weight to the assessment of Dr. Dashefsky… I find Dr. Dashefsky's own physical examination does not support the need for a cane, the inability to stand or walk for more than 4-5 hours or the inability to walk more than a few feet without a cane. Specifically, physical examination revealed normal strength, sensation, range of motion, gait and reflexes and only diminished prolonged expiratory phase.

I also afford little weight to the assessment of Lisa Miller, PA-C, who found the claimant could sit and stand for 10-20 minutes, lift less than 5 pounds, cannot kneel, stoop or squat and needs to lie down and take frequent breaks. Ms. Miller found the claimant's limitations were secondary to double vision precluding driving and work on a computer as well as chronic pain and fatigue syndrome, secondary to arthritis, fibromyalgia and diabetes. The record, summarized above, reveals routine, effective treatment for asthma and back pain. Additionally, there is no evidence the claimant experiences persistent double vision and her diabetes is without significant complications.

I afford great weight to the assessment of State agency physical consultant Dr. Mari-Mayans, who found the claimant, could lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand and walk for six hours. I concur with Dr. Mari-Mayans, that the claimant can perform light [work]. Additionally, I considered the claimant's subjective complaints of pain and shortness of breath and provided additional limitations. Specifically, I afforded a sit/stand option, limited the claimant's postural maneuvers, exposure to

> environmental hazards, afforded the opportunity to utilize a cane and accounted [for] the claimant's alleged visual limitations….
>
> The claimant is unable to perform any past relevant work….
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform….
>
> The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2012, through the date of this decision.

(R.23-30.)

The record demonstrates that the ALJ's decision to accord greater weight to the functional capacity assessment of Dr. Mari-Mayans than to that of Ms. Miller is supported by substantial evidence. The court recognizes Ms. Miller's treatment history with plaintiff, and that ALJ's should accord "treating physicians' reports great weight, 'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). However, Ms. Miller is not a physician, and even if she had been, the ALJ is not bound by the opinion of a treating physician on the matter of functional capacity. *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Here, the ALJ looked to plaintiff's history of medical treatment and the conclusions of all of her treating sources to determine that Ms. Miller's findings of limitation were not an accurate reflection of plaintiff's medical issues, as documented in the record. Further, the mere fact that Dr. Mari-Mayans was a state agency consultative examiner is not dispositive, because "state agent opinions merit significant consideration" in light of their expertise in Social Security disability programs. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing SSR 96-6p).

13

While plaintiff disagrees, the court must point out that where there exist conflicting medical findings on the record under the ALJ's review, "the ALJ is not only entitled but required to choose between them." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). And while plaintiff believes that the ALJ's discussion was not sufficiently thorough to justify his decision, it is well-established that – although an ALJ must provide sufficient discussion to allow the court to determine whether any rejection of evidence was proper – he or she need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status. *Johnson v. Comm'r*, 529 F.3d 198, 203- 04 (3d Cir. 2008) (citing *Burnett v. Comm'r*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). A "written evaluation of every piece of evidence is not required, so long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (citing *Green v. Shalala*, 51 F. 3d 96, 101 (7th Cir. 1995)). Lastly, the substantial evidence standard is a deferential one, "and includes deference to inferences drawn from the facts." *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999). The ALJ has supported his conclusions with facts sufficient to satisfy the above requirements.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. *McMunn v. Babcock*, 869 F.3d 246 (3d Cir. 2017). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is supported by substantial evidence, and judgment should be entered for the defendant and against the plaintiff. For this reason, the defendant's motion for summary judgment will be granted; the plaintiff's motion for summary judgment will be denied; and, the decision of the Commissioner will be affirmed.

Appropriate Orders will be entered.

**ORDER OF COURT**

AND NOW, this 23rd day of January, 2018, for the reasons set forth in the foregoing Memorandum, the plaintiff's motion for summary judgment (ECF No.11) is DENIED; the defendant's motion for summary judgment (ECF No. 14) is GRANTED; and, the decision of the Commissioner is AFFIRMED.

*/s/ Robert C. Mitchell*
Robert C. Mitchell
United States Magistrate Judge